IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| NORMAN LEE BIRL JR. #591717 | § | |
| v. | § | CIVIL ACTION NO. 9:12cv142 |
| NATRENIA HICKS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Norman Birl, an inmate of the Texas Department of Criminal Justice, Institutional Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights.  The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).  As Defendants, Birl names property officer Natrenia Hicks and assistant warden Gregg Oliver.

In his complaint and at an evidentiary hearing, Birl stated that on February 23, 2011, the Eastham Unit went on an administrative lock-down, in which a unit-wide search (called a shakedown) would be conducted.  Officers Parks and Olowomeye searched Birl's property and told him that he had to fill up the "red basket" with legal materials.[1]  After Birl filled the red basket, Parks told him that he could not have any more of his property.  Birl asked why not, and Parks said that it was because Birl had enough in the red basket.

Officer Olowomeye then called Hicks, the unit property officer, and told her what he and Parks had told Birl to do.  Hicks told the officers to confiscate all of the property which would not fit into the red basket.  Birl told Hicks that there were electrical appliances in the red basket which

---

[1]TDCJ inmates receive a locker comprising 1.75 cubic feet in which they must store their property.  The red basket is a sizing bin into which property is placed so as to measure 1.75 cubic feet.

1

should not be counted with his personal property, but Hicks stated that "you got too much property and I am going to take what is not in the basket."

As a result, Birl says, Hicks took a number of items of legal property, including his parole file, the statement of facts and transcript in his criminal case legal materials belonging to other inmates whom Birl was helping, a multi-plug outlet, a "U.S. Supreme Court law book," and statements and affidavits given to him by other inmates with regard to a case then on appeal called Birl v. Director.

Birl filed a grievance, and the response from Warden Oliver was that Birl had been given back the items listed in the grievance, but Oliver did not state or refer to the deposition of the statement of facts and transcript, or the multi-outlet plug.  Birl then filed a Step Two appeal of this grievance, to which the response was that insufficient evidence was found to show that Birl's property had been improperly confiscated and that unit staff has been instructed to ensure that proper procedures are followed when confiscating inmate legal property.  However, Birl says, this response also did not refer to the confiscation of Birl's statement of facts and transcript.

On April 5, 2011, Birl states that he was called to the property room to pick up property which had been confiscated.  At that time, Hicks told him that she had separated the other inmates' legal materials from his and given their property back to them.  Birl reminded her that he had said he was assisting them with their cases; Hicks replied that he was not supposed to have other inmates' legal materials in his possession and that she thought inmates were supposed to meet up in the law library.  Birl said that he had a constitutional right to help other inmates with their cases, but Hicks said that she "didn't want to hear it." At some point, Birl stated that Hicks told him that "you shouldn't be filing this stuff on officers anyhow."

Two days later, Birl filed a grievance about this conversation.  This grievance also complained that Hicks had a close working relationship with an officer named Haynes, who was named as a defendant in another of Birl's lawsuits.  Some statements by other inmates against Haynes were missing, so Birl believed that these statements were "the real reason for going through

2

and reading my legal materials."  Birl contended that Hicks had retaliated against him for filing grievances and complaints against Haynes.  He asked that the statements against Haynes be returned, and that his law books and multi-outlet plug be returned as well.  The response to this grievance, signed by Warden Oliver, was that "Officer Hicks advises due to your own admission of having other offenders' property (legal book) the legal material was confiscated and returned to the offender to which it belonged. No retaliation towards you in any manner was conducted."

Birl then filed a Step Two grievance appeal complaining that the response to his Step One grievance did not address his claims, but he says that the response to this grievance did not resolve the issues presented.

On June 16 and 17, 2011, Birl says that according to "reliable and credible information," Hicks destroyed his property, including the statement of facts and transcript from his trial.  He filed a Step One grievance, but the response to this grievance came from Warden McComb, who was not assigned to the Eastham Unit.  Furthermore, Birl says, McComb did not conduct an investigation, but simply relied on Hicks' statement; McComb did not address the relief requested or the retaliation claim.  He filed a Step Two grievance appeal, to which the response was that all of his property had been returned on April 5 and there was no record that any of it was destroyed.  Birl says that the destruction of his property, including the statement of facts, the transcript, the law book, and the multi-outlet plug, was not recorded because it was done in retaliation for the filing of grievances.

At the evidentiary hearing, Birl explained that he believed he was the victim of retaliation because Haynes, the defendant in his previous case, was a friend and co-worker of Hicks.  He noted that Hicks' husband, Fred Hicks, was a grievance officer at the unit as well.

Birl acknowledged that prison employees are co-workers and often friends, but stated that "incidents and events have transpired to have me believe that Hicks is retaliating."  He pointed to a grievance which he filed in October of 2012 which Fred Hicks refused to process, and the warden later stated that it was improper for Fred Hicks to have processed it because of the relationship between the grievance officer and the person being grieved.  When reminded that this grievance was

3

filed in 2012, well after the present lawsuit was filed, Birl stated that it was "all connected" and proved a "pattern and campaign of harassment."

Birl stated that his criminal conviction occurred in 1991 and that the court proceedings concerning his conviction were over.  When asked why wouldn't Hicks retaliate by taking current litigation, rather than a transcript for a court proceeding no longer in litigation, Birl replied that the Court may not realize that in prison, "things get manipulated through the system," so you "have to put it together to understand."  The Court explained that Birl's claims must be based on facts rather than speculation, and Birl said that he and Hicks have had several run-ins about the case he had filed. He added that there were statements made about how Haynes was right in what she did (i.e. in the incidents forming the basis of the prior lawsuit) and that "what Hicks is doing will be done."  He contended that Hicks destroyed his property for no reason.

In this regard, Birl specifically said that his parole file and the statement of facts and transcript from his criminal case had been destroyed.  He said that he had been given the chance to mail his property to someone in the free world, but that he could not afford to do so because there was a hold on his TDCJ account.  Hicks told him that she would make "reasonable disposition" of his property but did not tell him that she would destroy it.

Birl stated that he had a constitutional right to assist other inmates with litigation and so it was his understanding that he could possess the legal materials of other inmates, although he conceded that the materials could be confiscated if it exceeded the storage limits.  When asked if this was what had happened here, Birl said "yes and no," explaining that he had not been allowed to fill up the red basket because they made him put electrical appliances into the basket, even though such appliances were not supposed to be put in the basket.

When asked what harm he suffered as a result of the confiscations, Birl explained that he has a First Amendment right to petition for redress of grievances, and he cannot do that without his property.  The Court pointed out that he did not need his criminal transcript for that because that case

was over, and Birl said that he "might need it in the future."  In addition, Birl said, he should have been allowed to keep his transcript because it belonged to him and not to Hicks.

Warden Dewberry, a TDCJ official also present at the evidentiary hearing, testified that the "red basket" is a sizing bin comprising 1.75 cubic feet, which is the amount of property that inmates are allowed to possess.  He said that electrical appliances such as fans were not supposed to be put in the basket and that a fan would not fit into the basket anyway.  Dewberry explained that items such as legal papers are normally put into the basket and that inmates can get extra storage boxes if needed for legal materials.  Birl stated that he had tried to get extra storage boxes, but was told that he could not have them because his legal material was not current.

Birl reiterated that his claims concerned both the taking of property and retaliation.  He again referred to his grievance of October 26, 2012, which was returned unprocessed by Fred Hicks, and says that a response by Warden Ervin said that Fred Hicks should not have processed it.  Birl stated that "little things establish a pattern" of retaliation and noted that Hicks had said "I've got it, you're not going to get it" with reference to his property.

In June of 2011, Birl said, a staff support inmate who worked for Hicks in the property room told him that Hicks had destroyed his property.  Birl later asked Hicks about this, and she confirmed that the property had been destroyed.  He contended that Hicks failed to follow proper procedures in this regard.

Warden Dewberry explained that an inmate with excess property is given the opportunity to mail it out at his own expense or to have it picked up.  If neither of these things is done, the property eventually does get destroyed.  Birl responded that the rule is "flexible" and that in his view, Administrative Directive 03.72 does not cover the Eastham Unit but only the new units such as the Michael Unit.  In addition, he stated that officers have discretion to allow inmates to keep certain property; in this case, he says, some of the property which he was allowed to keep was of "little or no value."

<u>The TDCJ Records</u>

Birl's prison records were offered into evidence at the hearing, and Birl agreed to allow the

Court to review them.  In reviewing these records, the Court will assume that Birl's pleadings and

testimony are true and will disregard any factual assertions made at the <u>Spears</u> hearing or contained

in the prison records which contradict factual assertions made by Birl.  *See generally* <u>Wilson v.</u>

<u>Barrientos</u>, 926 F.2d 480, 482-83 (5th Cir. 1991).

The property logs show that on February 23, 2011, Officer Olowomeye confiscated property

from Birl consisting of 15 bundles of legal materials, two bowls, a cup, eight books, one multi-outlet

plug, and one hot sauce. On April 5, Hicks returned nine legal envelopes, two bowls, a cup, six

books, and the hot sauce.  The only property on the log listed as being destroyed was the multi-outlet,

which was destroyed on September 9, 2011.  On that date, a person named Brenda Sanchez sent a

message to Hicks saying "all authorized legal and personal property has been returned to Birl and

no further action is warranted."

In his grievance dated March 7, 2011, which was grievance no. 2011114737, Birl stated as

follows:

> During the shakedown, Officer Perry and Officer Olowomeye inventoried my
> property.  After filling up the red basket with legal materials, I was then informed by
> officer Parks that that was it and that I could not have any more of the property.
> When I inquired why not, I was told by Officer Parks that I had enough (in the red
> basket).  Officer Olowomeye called Property Officer Mrs. Hicks because he and I
> was having a communication problem and an understanding problem.  However,
> after all said and done, the following particulars were confiscated from my
> possession; legal materials, a Bible, a Qu'ran, a Besorah [another religious book], an
> almost empty bottle of hot sauce, 2 eating bowls, 1 drinking cup, 1 multi-outlet, law
> books, bottom dentures, parole papers and materials, other legal materials belonging
> thoroughly [sic] to other offenders.
>
> This confiscation of my property by Officer Parks and Officer Olowomeye was not
> done with a regard toward unit policy, administrative directive, rules, or regulations
> when measuring the property according to the red basket.  Electrical appliances was
> counted in with the property items such as radio, headphones, coax cable, and the
> multi outlet that greatly diminished the capacity.  Moreover, several folders of legal
> materials were matters which I was using in preparation of my appellate brief in the
> case of <u>Birl v. Thaler</u>, no. 10-40810, in the Fifth Circuit.  Having these materials
> confiscated from me at a time when I truly needed the materials and the exhibits has
> severely hampered, restricted, and hindered the preparation of what could have been
> a well and effectively prepared brief.  I had 40 days to prepare the file the brief but

that preparation was effectively circumvented by officers Parks and Olowomeye who did not follow appropriate procedures or policy.  Consequently, Officers Parks and Olowomeye, in shaking down two offenders before me, did not take legal materials and therefore it is my belief that confiscation of his property was in response to my suit which is presently pending and in retaliation for filing on their fellow officer.

Action Requested to resolve your complaint: (1) the return of my property: multi outlet, Bible, Qu'ran, Besorah, 2 bowls, 1 cup, legal materials belonging to other offenders, my parole papers and materials, and container with bottom dentures; (2) submit a copy of this grievance to the General Counsel's office and Attorney General's Office over this case.

The response to Birl's Step One grievance, signed by Warden Oliver and dated May 16, 2011, reads as follows:

Your complaint has been reviewed.  Investigation finds property items were confiscated due to excessive amounts of property.  Nine legal envelopes, 2 bowls, 1 cup, 6 books, and 1 hot sauce were returned to you on 04-05-11.  Other legal documents found to belong to other offenders were returned to the offender in [sic] which they belonged.  No further action taken at this time.

Birl filed a Step Two appeal of this grievance on May 28, 2011.  In this grievance appeal, Birl states as follows:

In grievance no. 20111147837, Warden Oliver failed to respond and resolve the following issues: (1) Whether I have a right to maintain in my possession other inmates' legal materials in assisting the inmates with their access to court claims; (2) whether the policy or practice during the shakedown was strictly followed and governed the capacity limit applied to all inmates or whether Officer Parks and Officer Olowomeye was strictly following the shakedown administrative directive; (3) whether Officer Parks and Officer Olowomeye was [sic] retaliating against me by taking and confiscating my legal property as a result of filing grievances and court actions against Sgt. Haynes; (4) whether confiscating from my possession legal materials entrusted to me by the inmates who are owners of the legal materials and who cannot file their claims without the assistance of me or some other inmate, denied these inmates access to the courts; (5) whether the lost, misplacing, or deliberate destruction of my trial records (statement of facts and transcript) will be found, or will be replaced, or I will be reimbursed the costs of those records by either one of the officers or by all these officers, Officer Parks, Officer Olowomeye, and Officer Nicks, and (6) Warden Oliver did not resolve the question inherent in the subject matter, and that is whether being in possession of the other inmate legal materials was conduct that was not protected conduct by the federal and state constitution, that policy, practice, rule, or regulation supports the actions of Officers Parks, Olowomeye, and Hicks in their confiscation of my personal and legal property, as well as the legal property belonging to the other inmates.  Consequently, inmates' legal materials, as well as my own, are lost.  Request Step 1 be overturned.

The response to this Step Two grievance appeal, dated August 5, 2011, and signed by C. Lawson, reads as follows:

7

This office reviewed the issues presented in your grievance.  Your property concern was referred to the Region I Grievance Office.  Region I stated that insufficient evidence was found to support your claim that your property was inappropriately confiscated.  No further investigation is warranted.

Your legal property concern was referred to Access to Courts.  Access to Courts stated that in accordance with AD-03.72 and ATC-040, unit staff have been instructed to ensure that proper procedures are followed when searching and / or confiscating offender legal property.  It is noted that you were out of compliance on February 23, 2011, by possessing excessive property.  It is also noted that offenders are allowed to possess another offender's legal property, if they are assisting them. However, they are only allowed to possess the other offender's legal property if they have room to store it in their closable storage container, which you did not.  No further action is warranted.

On April 7, 2011, Birl filed Step One grievance no. 2011133048, in which he stated

as follows:

On April 5, 2011, at approximately 10:00 a.m. through 10:30 a.m., I went to the property room to pick up property that had been confiscated from me during the lockdown on February 23, 2011.  Property officer Mrs. Hicks told me that she had already gone through my legal materials and separated the other inmates' legal materials from mine, and had laid the inmates in and given them their property back to them [sic].  I told her that I was assisting those inmates with their cases and she told me: 'you shouldn't be down there in your cubicle doing legal work no way. You are not supposed to have other inmates' legal material in your possession anyway. I thought y'all were supposed to meet up in the law library.  The lives and safety of the inmates has been jeopardized.'

I informed Mrs. Hicks that I had a state and federal protected right to assist individuals with their cases.  She didn't want to hear it.  Officer Hicks read through my legal materials in order to separate each inmate's legal materials from mine.  She had to read through the folders and she had no proper or lawfully granted authority to do so.  Furthermore, the creation or the implementation of new policies in confiscating and distributing of property usurped the legislative authority of the Texas Board of Criminal Justice, whose duty it is to 'make policy that governs the lives of TDCJ offenders.'

Additionally, because the property room has freedom of access by STG officer Sgt. Haynes, the close working relationship between property officer Hicks and Sgt. Haynes, as well as others, compels me to believe that the missing exhibits (statements against Sgt. Haynes by three inmates in regard to Birl v. Dretke) - was the real reason for going through and reading my legal materials.  Therefore, aside from the loss of property, misplacing of property, and theft of property, Officer Hicks has retaliated against me for filing grievances and other petitions against Sgt. Haynes. Consequently, she is liable for the loss and violation.

Action requested to resolve complaint: (1) Return my exhibits (statements) against Sgt. Haynes; (2) the reconfiscation and of my property and the enforcing of 'new' policies by Officer Hicks without authorization from the Board of Criminal Justice should be held void and my law books and multi-outlet returned; (3) that Officer

Hicks violated state and federal law in reading and separating and returning legal materials to inmates.

The response to this grievance stated as follows:

> Your complaint has been reviewed.  Officer Hicks advises due to your own admission of having other offenders' property (legal work) the legal material was confiscated and returned to the offender to which it belonged.  No retaliation towards you in any manner was conducted.  No further action taken at this time.

Birl's Step Two appeal of this grievance, signed May 28, 2011, reads as follows:

> Warden Oliver failed to address - (1) the theft of my exhibits (statements) against Sgt. Haynes that was to be used in Birl v. Thaler; (2) the enforcement of 'new' policies implemented by Officer Hicks that supersede state and federal law and the Board of Criminal Justice (see Step One, action requested, no. 2); (3) the return of my law books which were "reconfiscated" without sufficient justification and statement of facts (trial records); (4) the return of my multi-outlet that I have a legal right to possess; (5) the impermissible acts committed by property officer Hicks in deliberately reading confidential and personal legal mail from the courts and from attorneys; (6) the impermissible acts of confiscating from my possession legal materials belonging to other inmates who I was assisting in the preparation of habeas corpus applications and reading those materials and denying those inmates the right to petition the courts; (7) that Warden Oliver is unfair, unjust, and partial in his responses at the Step One level because approximately 95 percent of his responses are based on outright lies to his face that are cover-ups for the acts of the officers are [sic] employees involved and this is common knowledge on Eastham.

> Warden Oliver should not be allowed to respond to any grievances filed by me in the future.  I am totally dissatisfied with his failure to abide by his ethical obligations in dealing fairly and justly with both sides of my issues.  And, Warden Oliver did not address whether Officer Hicks or Sgt. Haynes would return my exhibits (statements) that was to be used in my brief, and my trial records said to be missing.  I am requesting that the action taken at Step I by Warden Oliver be overturned and a more definitive response be given on the action requested at Step I and in this Step II.

The response to this grievance stated that the issue was previously addressed on Step Two grievance no. 2011114737 and Birl should refer to that response.  In a later grievance, no. 2011184277, Birl was again told that none of his property had been destroyed; this grievance response was signed before September 9, 2011, when Hicks said that the multi-outlet plug was destroyed.

9

Legal Standards and Analysis

I. Confiscation of Property

A. Personal Property

Birl's first complaint concerning the taking of his property.  He says that he lost his parole file, the statement of facts and transcript in his criminal case, a law book, and a multi-outlet plug. The TDCJ records show that all of Birl's property was returned to him except for the multi-outlet plug, which was destroyed; however, the Court will assume that Birl's pleadings and testimony are true and that he lost all of the property which he says that he did.

To the extent that Birl complains of the loss of personal property, in the form of the multi-outlet plug, the claim has no merit.  Birl argues that the taking and subsequent destruction of this item was improper and done for purposes of retaliation; consequently, this taking was a random and unauthorized act within the meaning of Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on grounds not relevant here) and Hudson v. Palmer, 468 U.S. 517 (1984).  These holding in these cases, known collectively as the *Parratt/Hudson Doctrine*, states that a random and unauthorized deprivation of a property or liberty interest does not violate procedural due process if the State furnishes an adequate post-deprivation remedy.  *See* Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991).  Three predeprivation conditions must exist before the doctrine can be applied.  These are: (1) that the deprivation be unpredictable; (2) that predeprivation process be impossible, making any additional safeguard useless; and (3) that the conduct of the state actor be unauthorized.  Where these conditions exist, the State cannot be required to do the impossible by providing predeprivation process.  Charbonnet v. Lee, 951 F.2d 638, 642 (5th Cir. 1992), *citing* Zinermon v. Burch, 494 U.S. 113 (1990); Myers v. Klevenhagen, 97 F.3d 91, 94-95 (5th Cir. 1996).

Hudson holds that random and unauthorized deprivations of property by prison officials, even when intentional, do not violate the Due Process Clause of the Fourteenth Amendment provided that an adequate state post-deprivation remedy exists.  Hudson, 468 U.S. at 533.

10

By contrast, the "adequate post-deprivation remedy" analysis does not apply where the taking was not random and unauthorized, but was done pursuant to an established state procedure, and the lawsuit challenges the procedure itself.  *See* Carmona v. Branstuder, 68 F.3d 470, 1995 WL 581807 (5th Cir., September 18, 1995), *citing* Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).  In Carmona, the plaintiff complained that some of his property was missing after a search by prison personnel.  The Fifth Circuit observed that the plaintiff did not challenge the procedures for searching prisoners' cells, but instead argued that the defendants took his property and then did not follow established prison procedures; this was held to be a random and unauthorized deprivation rather than a challenge to an established state procedure.

The distinction between these theories was discussed in Holloway v. Walker, 784 F.2d 1287, 1292 (5th Cir. 1986).  In that case, the plaintiffs claimed that they were deprived of property through a judicial proceeding presided over by a biased and corrupt judge.  The Fifth Circuit held that the plaintiffs were not challenging the validity of the established procedure, but the allegedly illegal and unauthorized actions of the judge; because an adequate state post-deprivation remedy existed, the plaintiff's federal claims were barred by Parratt and Hudson.  The Fifth Circuit specifically observed on rehearing that random and unauthorized deprivations of property or liberty interests may be made even by high-ranking officials with the power to grant pre-deprivation hearings.  Holloway v. Walker, 790 F.2d 1170, 1173 (5th Cir. 1986) (opinion on rehearing).

In the present case, Birl argues that the taking of his property was improper because it was done with a retaliatory motive and that the property should not have been confiscated under TDCJ rules.  This is a challenge to a random and unauthorized taking and thus falls within the ambit of the *Parratt/Hudson Doctrine*.  The Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for the random and authorized taking of property, so the appropriate forum for Birl's claim regarding the loss of personal property lies in state court or in the administrative procedures of TDCJ rather than federal court.  Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1987); *see also* Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994).

B. Legal Property

Birl complains that his parole file and the records from his criminal case were confiscated, as well as a book of Supreme Court cases and legal material belonging to other inmates.  The Fifth Circuit has held that the right of access to legal materials is simply an offshoot of the right of access to court, because the Court's main concern is protecting the ability of the inmate to prepare a petition or complaint.  Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986).  As a general rule, inmates have a right of access to legal materials, and prison officials cannot deny inmates access to court.  Bounds v. Smith, 430 U.S. 817 (1976).  However, actual injury must be shown to set out a violation of Bounds.  Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court).

In so holding, the Supreme Court provided the following examples of "actual injury" under Bounds:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 116 S.Ct. at 2180; see also McIntosh v. Thompson, 463 Fed.Appx. 259, 2012 WL 602437 (5th Cir., February 24, 2012).  In McIntosh, the plaintiff complained that he had extensive legal property confiscated and destroyed, including trial transcripts, divorce transcripts, property records, and legal paperwork from old cases.  The Fifth Circuit stated that "even if McIntosh's constitutional rights had been restricted, he failed to allege sufficiently that he suffered an injury in fact, which is required to state a claim for denial of meaningful access to the courts.  See Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)."

Similarly, Birl has failed to show that he suffered any harm as a result of the confiscation of his legal materials.  He conceded that he did not have any active litigation concerning his conviction, which had become final in 1991.  Nor did Birl show that he suffered any cognizable legal harm as a result of the loss of his parole file.  When asked at the evidentiary hearing what harm he had

12

suffered, Birl stated that the property belonged to him, not to Hicks, and that he "might need the property in the future."  This is wholly insufficient to show legally cognizable harm or to set out a constitutional claim for the deprivation of legal materials.  His claim on this point is without merit.

Birl also complains that legal property belonging to other inmates was confiscated.  The TDCJ records indicate that this property was returned to the inmates to whom it belonged.  Although Birl indicates that his own property was not returned to him, he makes no similar claim concerning the property of other inmates, nor does he show that he would have personal knowledge as to whether or not these other inmates received back their legal materials.

Even assuming that the legal materials of the other inmates was destroyed, however, Birl lacks standing to challenge the confiscation and destruction of property belonging to another person.  *See* Littleton v. Grimes, 286 Fed.Appx. 887, 2008 WL 2824979 (5th Cir., July 23, 2008) (inmate lacked standing to claim that he was denied access to the legal materials of other inmates whom he was assisting).  Although Birl argued at the evidentiary hearing that he has a constitutional right to assist other inmates, the Supreme Court has held that prisoners do not possess a First Amendment right to provide legal assistance to fellow inmates beyond the protections normally accorded to prisoners' speech.  Shaw v. Murphy, 532 U.S. 223, 228, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); Simmons v. Cockrell, 81 Fed.Appx. 488, 2003 WL 22770177 (5th Cir., November 24, 2003) (citing Shaw in holding that the inmate plaintiff "has no constitutional right to provide legal assistance to other inmates." )

Instead, the constitutional protections accrue to the prisoner receiving the legal assistance, not the prisoner providing it.  Johnson v. Rodriguez, 110 F.3d 299, 311 (5th Cir. 1997); Tighe v. Wall, 100 F.3d 41, 43 (5th Cir. 1996) (stating that "prisoners have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed.") As a result, Birl lacks standing to complain of the loss of legal materials belonging to another prisoner, because it is the person to whom the materials belonged who would have suffered the loss of access to court.  His claim on this point is without merit.

13

Birl further complains in his grievances that three statements of other persons, which he intended to use in his brief in a case called <u>Birl v. Dretke</u>, civil action no. 9:10cv36, were also taken. He has failed to show that he suffered any harm as a result of this taking.  At the time of the confiscation of the property, Birl's case was on appeal before the Fifth Circuit Court of Appeals. As a general rule, litigants cannot present new evidentiary materials in an appellate brief. *See* <u>Sparks v. Swart</u>, 239 F.3d 365, 2000 WL 1741569 (5th Cir., November 8, 2000), *citing* <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 n.10 (5th Cir. 1992).  Thus, Birl could not properly include these statements in his brief even had these statements been in his possession.  Furthermore, Birl has not shown harm because he prevailed on appeal; the Fifth Circuit vacated the district court's decision dismissing his case and remanded it for further consideration.  <u>Birl v. Thaler</u>, 470 Fed.Appx. 362, 2012 WL 1578921 (5th Cir., May 7, 2012). Because Birl has not shown that the loss of these statements affected his legal position, his claim regarding their taking is without merit.[2]

## II. Retaliation

Birl's second claim, which he discussed extensively at the evidentiary hearing, is that he was the victim of retaliation.  The Fifth Circuit has held that the elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997).  This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred.  <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995).

---

[2]Birl does not indicate who gave the statements to which he refers; the records show that after the case was remanded, Birl filed three statements in support of his claim together with his response to the answer of the Defendants.

14

The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Birl's primary evidence of retaliation was the fact that Hicks and Haynes were "friends and co-workers." As stated at the hearing, however, all prison employees are co-workers, and many of them may be considered friends or acquaintances. The courts have held that such tenuous and speculative connections are by themselves insufficient to give rise to a chronology from which retaliation may plausibly be inferred. Salter v. Nickerson, civil action no. 5:12cv22, 2013 WL 866198 (E.D.Tex., January 25, 2013, *Report adopted at* 2013 WL 866475 (E.D.Tex., March 7, 2013, no appeal taken). The district court in Salter explained that otherwise, any adverse interaction between a guard and a prisoner could form the basis of a retaliation claim against any other prison employee on the theory that fellow officers and co-workers are "colleagues." *See also generally* Swank v. Tanner, civil action no. 11-3122, 2012 WL 1565298 (E.D.La., May 3, 2012, no appeal taken) (inmate Swank, who filed a complaint against inmate Perkins, later claimed that Officer Williams had retaliated against him because Perkins worked on Williams' cleaning crew and Perkins and Williams were friends; the district court held that this retaliation claim was speculation). Such a connection may be appropriately drawn on the facts of a given case, but Birl has offered nothing beyond conjecture to support his claim that Hicks retaliated against him based on her purported association with Sgt. Haynes.

Birl also points to various remarks by Hicks to support his claim of retaliation. He quotes her as saying that he shouldn't be doing legal work in his cubicle, he should not be in possession of other inmates' legal materials, and that "you shouldn't be filing this stuff on officers anyhow," although he does not mention this latter remark in his grievance complaining of Hicks' alleged retaliation. While these remarks may have been ill-chosen and inappropriate, Birl must nonetheless show that *but for* the alleged retaliatory motive, the action about which he complains would not have occurred.

15

Although Birl complains about the initial seizure of his property, his pleadings and testimony make clear that this seizure was carried out by Parks and Olowomeye, not Hicks. They took the property which would not fit in the red basket and turned it over to Hicks, the property officer. Birl contends that Hicks would not return his property to him, but he makes no showing that he had room to store it had it been returned; instead, he argued vaguely that the officers had "discretion" to allow him to keep the property.

Birl acknowledged that he was given the opportunity to mail the property off the unit at his own expense or have someone come pick it up. He said that he could not afford to mail the property off the unit and apparently could not get anyone to come pick it up. Warden Dewberry testified that under those circumstances, TDCJ policy provides that the property is destroyed. Consequently, Birl has not shown that but for the alleged retaliatory intent, the action complained of - destruction of the property which would not fit in the sizing bin and was not mailed off the unit or picked up by a visitor - would not have occurred.

Nor has Birl shown any constitutional violation in the fact that Hicks went through his legal materials in determining who they belonged to. The Fifth Circuit has held that a claim that legal mail was opened outside of a prisoner's presence, in violation of prison regulations, does not by itself state a constitutional claim. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993); *see also* McIntosh v. Thompson, civil action no. 6:09cv444, 2010 WL 5677139 (E.D.Tex., March 22, 2010, *Report adopted at* 2011 WL 336469 (E.D.Tex., January 31, 2011, *aff'd* 463 Fed.Appx. 259 (5th Cir., February 24, 2012) (no constitutional violation when prison officials went through inmate's legal work and determined that there were no active cases). Nor has he shown that he suffered any harm in the fact that legal materials belonging to other inmates were separated and returned to them.

Birl's vague and general allegations that in prison, "things get manipulated through the system" and "you have to put it together to understand" do not show that he was the victim of retaliation, nor does his assertion that a grievance filed over a year and a half after the events in this lawsuit shows that "things were all connected" or prove "a pattern of retaliation." These contentions

amount to no more than speculation and present only Birl's personal belief that he has been the victim of retaliation, which the Fifth Circuit has held is insufficient to set out a constitutional claim. *See* Johnson, 110 F.3d at 310; *accord*, Shelton v. Lemons, 486 Fed.Appx. 395, 2012 WL 3493982 (5th Cir., August 15, 2012) (where allegations of retaliation are conclusory and speculative, the district court does not abuse its discretion in dismissing the claim as frivolous); Armenta v. Pryor, 377 Fed.Appx. 413, 2010 WL 1849278 (5th Cir., May 10, 2010) (conclusory allegations of retaliation, which included no evidence of intent or causation, were not sufficient to sustain a claim). Birl's conclusory allegations do not show either direct evidence of retaliation or a chronology of events from which retaliation may plausibly be inferred, nor has he shown that but for the alleged retaliatory intent, the allegedly adverse actions taken by Officer Hicks would not have occurred. His claim on this point is without merit.

Even if Hicks' conduct violated TDCJ rules and procedures, this by itself does not set out a constitutional claim. The Fifth Circuit has stated that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). To the extent that Birl complains that Hicks violated prison rules, this claim is without merit.

### III. Warden Oliver

Birl complains that Warden Oliver responded to his Step One grievance by saying that his property had been returned, but that Oliver did not mention the statement of facts and transcript or the multi-outlet plug. He stated in the Step Two appeal of this grievance that Warden Oliver is "unfair, unjust, and partial" in his responses at the Step One level because 95 percent of the warden's responses to grievances are "based on outright lies to his face" and simply cover up the actions of employees and officers at the Eastham Unit.

Birl does not allege that Warden Oliver was involved in the taking of his property; rather, he contends that the warden did not properly investigate his grievance. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their

17

satisfaction, and so there is no violation of due process when prison officials fail to do so.  Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, 100 F.3d 952, 1996 WL 625331 (5th Cir., Oct. 2, 1996) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue; Thomas v. Lensing, et al., 31 Fed.Appx. 153, 2001 WL 1747900 (5th Cir., Dec. 11, 2001) (same).  Even if Warden Oliver did not investigate Birl's grievance properly and did not respond to all of the issues that Birl raised, this does not amount to a violation of the Constitution or laws of the United States.  Birl's claim against Warden Oliver is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Birl's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted.  Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim under 28 U.S.C. §1915A(b).  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

18

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted.  28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **11** day of **June, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE